MCGRATH, Plaintiff in error, v. STATE, Defendant in error.

*No. State 84. Argued March 7, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 172.)

294

For the plaintiff in error there was a brief by *Malloy & Mayew* and *Donald E. Mayew,* all of Kenosha, and oral argument by *Donald E. Mayew.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, and *William A. Platz,* assistant attorney general.

ROBERT W. HANSEN, J. The defendant renews the suggestion that this court adopt a "numerical yardstick," a judicially determined cutoff point between warrant and trial beyond which a defendant could not be tried because his trial would no longer be "speedy." The invitation is again declined.[1] What constitutes a speedy trial is not to be determined by the calendar alone. It depends upon the circumstances of the individual case, as established by the record.[2] The record in this case points up the difficulties inherent in the calendarized concept of what constitutes a speedy trial in criminal proceedings.

Four factors contributed substantially to the time elapsing between the initial complaint and the eventual trial. All four are related to actions of the defendant. None are related to acts of the prosecutor or trial court. They are in sequence of time:

[1] "Upon this appeal, the defendant urges that once an accused has demanded a prompt trial, there should be an established time span after which he may not constitutionally be tried. While a mandate of that kind would perhaps simplify the problems concerning speedy trials, we consider that it is not so wise a rule as presently prevails in this state; . . ." *Hansen v. State* (1965), 26 Wis. 2d 238, 241, 131 N. W. 2d 837.

[2] "Each case involving the issue of denial of a speedy trial turns on its own facts, although the general rule is stated to be that the right to a speedy trial is a right to be tried as soon as is reasonably possible. A motion to dismiss for lack of speedy trial will be denied where the accused is tried as soon as the orderly conduct of the business of the court permits." *Kopacka v. State* (1964), 22 Wis. 2d 457, 460, 126 N. W. 2d 78.

1. Defendant's use of an alias.

All that the bank or police authorities in Kenosha knew was that a forged cashier's check bore the signature, "Dr. Robert H. Murphy, M.D." They did not then know that "Murphy" was Joseph T. McGrath. The police and prosecution were entitled to whatever period of time was needed to connect the forgery with the forger. Even when the finger of likelihood pointed to the defendant, the state was entitled, in fact required, to make certain that "Murphy" and McGrath were one and the same individual. The time elapsing between the issuance of the warrant against "Dr. Robert H. Murphy, M.D.," and the successor warrant against Joseph T. McGrath was occasioned by the deliberate concealment of his true identity by the perpetrator of the crime. He cannot be heard to complain about a delay his conduct caused.

2. Defendant's incarceration in a federal penal institution.

Aside from the time here involved in contacting federal authorities and in twice securing from the county court writs of habeas corpus *ad prosequendum,* the fact of defendant's confinement in a federal prison required two four-week notices of his presence being required in the Kenosha court. Given the general responsibility of operating a federal penal facility and the specific responsibility for security measures being adequate on out-of-prison trips by inmates, the four weeks' notice is certainly a reasonable requirement. In any event, there is nothing the local court or prosecutor could do about it. It is elapsed time attributable entirely to the incarceration of the defendant, not occasioned in any way by prosecutorial acts of commission or omission.

3. Defendant's request for preliminary hearing.

When the defendant was brought to court from the federal prison, he requested appointment of counsel at public expense, which was his right. The next day, appearing with counsel, he requested a preliminary hearing, which was also his right. The ten-day requirement

for such preliminary hearing was specifically waived by the defendant and with his full consent the date for the hearing was set for September 21, 1967. It is no challenge to the right of defendants in felony cases to have a preliminary hearing to observe that one cannot order frosting on the cake and then complain about the time it takes to arrange for the frosting.

4. Defendant's pretrial motions.

During the time interval between the preliminary hearing and the trial, the defendant made several pretrial motions. One was a motion to dismiss on grounds of denial of speedy trial, requiring submission of briefs and ruling by the court. Another was a motion for a grand jury, requiring answer by the prosecutor and ruling by the court. Another was a motion for dismissal alleging (a) he was not escorted to the courtroom by a federal marshal; (b) he was not permitted to shave in jail; (c) there was a three-day delay between return to Kenosha and appearance before the magistrate. Once again, an answer by the state and ruling by the court was required. Finally, the motion for dismissal on grounds of denial of speedy trial was again made, arguments heard and trial court ruling made. Quite aside from the substance or lack of substance of the issues raised, each of these pretrial motions involved time and delayed the trial. They need not be called delaying tactics to be identified as time-consuming impediments to early trial.

If we agree, as we do, with the contention of the state that we deal here with the time between the issuance of the warrant against this defendant and the date of trial, we have a total elapsed time of less than seven months. If we were to agree, as we do not, with the contention of the defendant that we have here a time span between the issuance of the warrant against a "Dr. Robert H. Murphy, M.D., alias," and the date of trial, we would have a total elapsed time of eighteen months. In either event the responsibility for the delay goes in

very considerable measure to the four factors listed for which the defendant, not the prosecution, must be held in law responsible.

We find here a complete absence of purposeful or oppressive delay on the part of the state. This defendant was properly charged with the crime of forgery as soon as identity doubts created by him had been completely resolved. The defendant was promptly tried as soon as the orderly conduct of the business of the court, including disposition of procedural steps insisted upon by the defendant, permitted. We find no basis in fact on this record for defendant's complaint that he has been denied a speedy trial. We find every reason in law for restating that the right of speedy trial is necessarily relative, consistent with delays in some cases and dependent upon the circumstances in all cases.[3] The arguments that the defendant used to get the bank in Kenosha to pay him $4,423.17 on the forged check must have been far more persuasive than those he brought to the trial court or to this court.

*By the Court.*—Judgment affirmed.

---

[3] ". . . [T]his Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert,* 198 U. S. 77, 87. 'Whether delay in completing a prosecution . . . amounts to an unconstitutional deprivation of rights depends upon the circumstances . . . . The delay must not be purposeful or oppressive,' *Pollard v. United States,* 352 U. S. 354, 361. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U. S. 1, 10." *United States v. Ewell* (1966), 383 U. S. 116, 120, 86 Sup. Ct. 773, 15 L. Ed. 2d 627.