Connolly, J.
The defendant, Juan Cotilla, is charged with assault with intent to commit aggravated rape and aggravated rape (indictment no. 97-11838-001); assault with intent to commit a felony, to wit: rape (indictment no. 97-11838-002); and assault and battery by means of a dangerous weapon, to wit: a screwdriver (indictment no. 97-11838-003). The defendant has moved to suppress all statements made by him on September 20, 1997, the day of his arrest, claiming that the statements were taken in violation of his rights. The defendant argues that he never knowingly, intelligently or voluntarily waived his rights to remain silent and to have counsel present as guaranteed to him by Miranda v. Arizona, 384 U.S. 436 (1966), the Fifth and Fourteenth Amendments to the United States Constitution and Article 12 of the Massachusetts Declaration of Rights. The defendant claims that irrespective of the Miranda issue, the statements made by him were not the product of a rational mind and were not voluntary.[1]
This Court conducted evidentiary hearings on the defendant’s motion to suppress at Suffolk Superior Court on December 30, 1998, and at Norfolk Superior Court on February 19, 1999. After careful consideration of the testimony given and the evidence presented, the defendant’s motion is DENIED.
FINDINGS OF FACT
At 6:40 a.m. on September 19,1997, the police were called to 1939 Dorchester Ave. to investigate an alleged rape. Boston Police Detective Thomas Keeley, from the Sexual Assault Unit, responded to the call. Upon arriving at the scene, Detective Keeley questioned the victim who identified the suspect, Juan Cotilla, by name. Detective Keeley obtained a warrant for the defendant’s arrest that same day. At approximately 8:00 p.m. on September 20, 1997, Detectives Joyce and Keeley arrested the defendant at his house in 555 Hyde Park Avenue. The defendant was taken to District 18 where he was booked.
When it became apparent to the arresting officers that the defendant did not speak English, they obtained the assistance of Officer Hector Alicea, a Spanish-speaking police officer. Officer Alicea met Detective Keeley at the police station at approximately 8:30-8:45 p.m. and acted as an interpreter during booking procedures where the defendant gave biographical information. Officer Alicea later read the defendant his rights directly from a 2’ X 3’ blue board located on the wall at the police station.[2] The blue board listed a translation of Miranda rights into Spanish. During and after reading the defendant his rights, Officer Alicea asked him if he understood, to which the defendant stated that he did. The defendant initialed a rights form acknowledging that he had been given his rights and that he understood them. The defendant then stated that he wanted to talk to the police about the case and gave a statement which Officer Alicea translated. The defendant began giving his statement at 8:35 p.m., and went on for approximately 40 minutes. After taking the statements, Officer Alicea read Detective Keeley’s notes to ensure that the notes accurately reflected what had been said by the defendant and translated by him.
The defendant was not under the influence of alcohol or drugs at the time he gave the statement. He was lucid and never gave any indication to the police that he did not understand his rights or what was taking place at the station.
At the time of his arrest, the defendant was advised of the charges against him. The defendant then asked the arresting officers who the victim of the alleged rape was. The officers refused to give the defendant the name of the victim stating that they were not permitted to give out that kind of information.
RULINGS OF LAW
In ruling on a motion to suppress statements, the Court must employ a three-prong analysis: (1) whether the police satisfied the requirements of Miranda v. Arizona and its progeny; (2) whether the defendant voluntarily, knowingly, and intelligently waived his Miranda rights; and (3) whether the defendant made the statements voluntarily. Commonwealth v. Tavares, 385 Mass. 140, 145-46 (1982). The Commonwealth *198 bears the heavy burden proving the voluntariness of both the defendant’s waiver of Miranda rights and the defendant’s subsequent statements beyond a reasonable doubt. Commonwealth v. Smith, 412 Mass. 823, 837 (1992).
MIRANDA WARNINGS
The police are required to give a defendant Miranda warnings prior to beginning any custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Commonwealth v. Harris, 387 Mass. 758, 765 (1982). Custodial interrogation is questioning initiated by police officers after an individual has been taken into custody or otherwise deprived of his freedom in any significant way. Commonwealth v. Jung, 420 Mass. 675, 688 (1995). Where the Miranda requirements have not been met, any statements made by the defendant are deemed involuntary as a matter of law and must be suppressed. Tavares, 385 Mass. at 145.
In this particular case, the defendant gave his statement at the station after he was booked and after Officer Alicea had read him his rights. This court must consider whether the defendant “truly understood his Miranda rights ... in order to be capable of waiving them ‘knowingly and intelligently.’ ” Commonwealth v. Garcia, 379 Mass. 422, 427 (1980). Although the defendant did not speak or understand English, Officer Alicea read him his rights directly in Spanish from the blue board on the wall at the police station. Officer Alicea asked the defendant twice, once while he was reading him his rights and once after he had concluded, whether he understood his rights and the defendant answered affirmatively. This court finds that the defendant understood the Miranda warnings read to him in Spanish by Officer Alicea. This court further finds that the Miranda warnings, as they appeared on the blue board, were valid and complete.
WAIVER AND VOLUNTARINESS OF STATEMENTS
Once it is established that valid Miranda warnings were given prior to custodial interrogation, the defendant’s statements are admissible only if the Court finds that the defendant waived his Miranda rights voluntarily, knowingly and intelligently and that the defendant’s statements were made as a result of a voluntary decision and not as a product of coercion. Commonwealth v. Williams, 388 Mass. 846, 852-55 (1983). Although the issue of waiver is separate and distinct from the issue of voluntariness, the tests for determining the validity of the defendant’s waiver and the voluntariness of his statements are the same. Commonwealth v. Medeiros, 395 Mass. 336, 343 (1985).
The Court must examine the totality of the circumstances, which includes the defendant’s conduct, his physical and mental condition, age, education and experience, the influence of drugs or alcohol, as well as the details of the interrogation, including the location and manner of interrogation, the use of misrepresentations, promises or threats by the police and the recitation of Miranda warnings. Tavares, 385 Mass. at 145-46.
Finally, it is well established that a defendant can validly waive both his right to remain silent and his right to the presence of counsel. Brewer v. Williams, 430 U.S. 38, 405-06 (1977); Commonwealth v. Santo, 375 Mass. 299, 304-05 (1978).
The defendant argues that he did not make an “intelligent” waiver of the rights covered by the Miranda warnings. He argues that because the police officers refused to give him the name of the victim of the rape at the time of his arrest, which he claims was in violation of G.L.c. 263, §1, his decision to waive his rights was not an “intelligent” choice.
General Laws c. 263, entitled “Rights of Persons Accused of Crime,” states in relevant part:
§1. Nature of crime; right to be informed; penalty
Whoever is arrested by virtue of process, or whoever is taken into custody by an officer, has a right to know from the officer who arrests or claims to detain him the true ground on which the arrest is made; and an officer who refuses to answer a question relative to the reason for such arrest, or answers such question untruly, or assigns to the person arrested an untrue reason for the arrest, or neglects upon request to exhibit to the person arrested, or to any other person acting on his behalf, the precepts by virtue of which such arrest has been made, shall be punished . . . (emphasis added).
This court finds the defendant’s argument unpersuasive. G.L.c. 263, §1 requires only that a police officer inform a defendant of the reason for which he is being arrested and no more. That was precisely what was done in this particular case. At the time of the defendant’s arrest, he was fully informed of the charges that were being brought against him. The only information that the officers withheld from the defendant was the name of the alleged victim. This court does not read G.L.c. 263, §1 to require that a police officer give a defendant this type of information. The police officers in this case complied with all the requirements of G.L.c. 263, §1.
Further, Miranda does not require that a defendant be given all the details surrounding the crime he has allegedly committed before he can be deemed to make an intelligent waiver of his rights. “Our cases do not require that a defendant must have information regarding the crime about which he will be questioned or about police suspicions before making a valid waiver of his Miranda rights.” Commonwealth v. Raymond, 424 Mass. 382, 393 (1997) (court found unpersuasive defendant’s argument that he did not make a knowing and intelligent waiver of his rights because the police had not informed him that he was a central suspect of the crime or that [a co-defendant] had *199 confessed so that he did not understand the implications of the waiver), citing Commonwealth v. Amazeen, 375 Mass. 73, 78 (1978).
The totality of the circumstances in this case show that the defendant waived his rights voluntarily and that he voluntarily gave the statement to the police. The defendant in this particular case was not coerced into giving a statement in any way. The statement lasted only forty minutes and there is no evidence that the officers were anything but helpful to the defendant. Officer Alicea was acting as an interpreter to ensure that the defendant comfortably gave his statement in his native tongue. The defendant was not under the influence of drugs or alcohol and was alert and lucid at all pertinent times.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress is DENIED.

 The defendant had advanced a third argument in support of his motion which he waived in open court on December 30, 1998. Specifically, he argued that the statements were taken in violation of his statutory rights under M.G.L.c. 276, §33A.

 On December 30, 1998, the first day of the suppression hearing, Officer Alicea produced a white sheet of paper which he indicated contained the same Miranda rights in Spanish as those appearing in the blue board at the station. An issue arose when defense counsel pointed out that the fifth Miranda warning, specifically that the defendant could stop the questioning at any time, was missing from the white sheet of paper. On February 19, 1999, the second day of the hearing, Officer Alicea found and produced the actual blue board from which he read the defendant his rights on the day of his arrest. The defendant does not object to the rights as they appear in the blue board. This court finds that the defendant was read his rights directly from the blue board, a photograph of which was introduced into evidence the second day of suppression hearing. In any event, this court finds that the list of rights that appear in the white sheet of paper are sufficient. The law of this Commonwealth does not require that the fifth warning be read to a defendant at the time of his arrest. While the better practice is to include it when reading a defendant his rights, its omission does not violate a defendant’s rights. See Commonwealth v. Smith, 426 Mass. 76, 81 (1997), citing Commonwealth v. Lewis, 374 Mass. 203 (1978); see also Commonwealth v. Sanna, 424 Mass. 92, 100 & n. 12 (1997).